STATE of Missouri, Plaintiff–
Respondent,

v.

Harold SOLOMON, Defendant–
Appellant.

No. 22430.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 29, 1999.

Motion for Rehearing and Transfer to
Supreme Court Denied Oct. 20, 1999.

Irene Karns, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, John M. Morris, Assistant Attorney General, Jefferson City, for Respondent.

PHILLIP R. GARRISON, Chief Judge.

Harold Solomon ("Defendant") was charged by felony information with forcible

rape, § 566.030,[1] kidnapping, § 565.110, armed criminal action, § 571.015.1, and forcible sodomy, § 566.060. A jury returned a guilty verdict on all four charges, and he was sentenced to consecutive sentences of twenty-five years for forcible rape, ten years for kidnapping, five years for armed criminal action, and twenty-five years for forcible sodomy. Defendant appeals that conviction asserting error based on the trial court's denial of his motion to suppress the victim's in-court and out-of-court identifications, and its denial of his motion for mistrial after he was forcibly removed from the courtroom.

Defendant does not challenge the sufficiency of the evidence to support his conviction. The evidence, therefore, viewed in the light most favorable to the verdict, shows the following:

On the afternoon of November 24, 1996, Heather Wilson ("Wilson") drove to the Branson Wal–Mart to purchase some household items. After making her purchases, Wilson returned to her car and unlocked the door. As she entered the vehicle, Defendant grabbed the door and forced her into the car. Defendant opened his vest, showed Wilson a sheathed knife, and told her that if she did everything he said she would not get hurt.

Wilson moved over into the passenger seat of the car, and Defendant drove off of the parking lot and headed west toward Table Rock Lake. As they crossed Table Rock Dam and headed toward a scenic area, Defendant ordered Wilson to remove her clothing and she did so. He then turned down a dead-end road, parked the car, and walked over to the passenger side of the car. Defendant dropped his pants and demanded that Wilson perform oral sex on him. She complied. He then ordered her to put all of her clothing back on and forced her into the trunk of the car.

Defendant drove for approximately seven to ten minutes before stopping on a gravel road and removing Wilson from the trunk. Wilson was told to squint her eyes and then she was blindfolded and led into a mobile home. Wilson was able to view some of the details of her surroundings during this time, as Defendant changed the first blindfold for another. She was then forced to undress again.

While inside the mobile home, Wilson was again ordered to perform oral sex on Defendant, was repeatedly raped, and was forced to permit Defendant to perform oral sex on her. During her assault, she was able to catch glimpses of Defendant when her blindfold would fall down. After two-and-a-half to three hours, Defendant led Wilson to a bathroom where he demanded that she douche. After she complied, she was allowed to get dressed.

Defendant led her back to her car, removed her blindfold, and ordered her to get back into the trunk. Defendant drove her back to the Wal–Mart parking lot and told her that she could call for help after counting to one hundred. She counted to one hundred and then reached for the cellular phone inside of her purse and called her boyfriend. She then began pounding on the inside lid of the trunk and shouted for help. A passerby heard her cries and went to the store to get help. A Wal–Mart manager released the trunk and called the police. When the police arrived, Wilson told them of her ordeal and gave them a description of her assailant.

Approximately two weeks later, a highway patrolman in Taney County attempted to stop a vehicle driven by Defendant. Defendant attempted to evade the trooper but was caught fleeing his vehicle and was placed under arrest. Defendant's vehicle was taken into custody and an inventory search produced a sheathed knife. Officers also searched Defendant's home and found a number of items matching descriptions given to the authorities by Wilson.

On December 13, 1996, Wilson was shown five color photographs of Taney County inmates and asked if any of the

---

1. All statutory references are to RSMo 1994 unless otherwise indicated.

men pictured was her assailant. She quickly informed the officer that four of the five men in the photographs were not her attacker. Wilson was not sure about the fifth man because she could not see his eyes as he was looking down; however, she stated that he was a good possibility. She told the officer that she wanted to see his eyes before she made a positive identification.

In order to give Wilson a closer look at the men, the police asked her to view a lineup at the Taney County jail. Four of the five men pictured in the photographs were present.[2] Wilson identified Defendant as the man who attacked her.

On May 18, 1998, Defendant's trial commenced.[3] The court heard evidence and argument on the motion to suppress testimony of Wilson's in-court and out-of-court identification of Defendant as her assailant. The trial court overruled that motion, finding no impermissibly suggestive police procedures were used, and at trial, Wilson identified Defendant as her attacker.

At the conclusion of closing arguments, Defendant rose to his feet and attempted to speak. The trial judge told him to sit down and be quiet. Defendant continued to speak out, and the trial judge ordered him removed from the courtroom. Defendant refused to leave the courtroom peacefully and cursed the six officers who were called in to subdue Defendant. After Defendant was escorted from the courtroom, the trial judge denied defense counsel's motion for a mistrial and retired the jury. After deliberating for approximately four hours, the jury returned a verdict of guilty on each of the four charges.

In Defendant's first point on appeal, he contends that the trial court erred and abused its discretion in overruling his motion to suppress Wilson's in-court and out-of-court identifications and in admitting them over his objections at trial. Defen-

dant argues that the pre-trial identification procedure used by the police was impermissibly suggestive, resulting in a very substantial likelihood of irreparable misidentification, thus, tainting the in-court identification of him as the assailant.

 Appellate review of a trial court's denial of a motion to suppress is limited to a determination of whether the evidence is sufficient to support the trial court's findings. *State v. Wise*, 879 S.W.2d 494, 503 (Mo. banc 1994), *cert. denied*, 513 U.S. 1093, 115 S.Ct. 757, 130 L.Ed.2d 656 (1995); *State v. Glessner*, 918 S.W.2d 270, 278 (Mo.App. S.D.1996). The facts and reasonable inferences are viewed in favor of the challenged ruling. *State v. Jones*, 917 S.W.2d 622, 624 (Mo.App. E.D.1996).

 To exclude identification testimony, the defendant must show: (1) the pretrial identification procedure was impermissibly suggestive; and (2) the suggestive procedure made the identification at trial unreliable. *State v. Vinson*, 800 S.W.2d 444, 446 (Mo. banc 1990). Identification testimony will only be excluded when the pretrial identification procedure was so suggestive that it gave rise to a very substantial likelihood of irreparable misidentification. *State v. Hornbuckle*, 769 S.W.2d 89, 93 (Mo. banc 1989), *cert. denied*, 493 U.S. 860, 110 S.Ct. 171, 107 L.Ed.2d 128 (1989).

 In identification procedures, "[t]he linchpin of due process" is reliability. *State v. Weaver*, 912 S.W.2d 499, 520 (Mo. banc 1995), *cert. denied*, 519 U.S. 856, 117 S.Ct. 153, 136 L.Ed.2d 98 (1996). Reliability is assessed under the totality of the circumstances. *Hornbuckle*, 769 S.W.2d at 93. The factors to be considered include: (1) the opportunity of the witness to view the subject at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description

---

**2.** One of the men pictured in the photograph had been released from custody before the lineup.

**3.** The events underlying these charges occurred in Taney County, the trial occurred in Christian County on a change of venue.

of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140, 154 (1977).

■ In the instant case, Defendant contends that the identification procedure was impermissibly suggestive for several reasons. Defendant first argues that the authorities' revelation to Wilson that they had a suspect in custody and had recovered a sheathed knife created the unmistakable inference that one of the men in the photographic array was the suspect. In this case, the record reveals that the authorities never informed Wilson that any of the men in the photographic array was the suspect. Further, the record does not provide any evidence that Wilson inferred from the authorities' revelation that any one of the men was the suspect. Even if such an inference was gained, it has been held that when an individual is shown a photographic array it is implicit that within those photographs is a person suspected by the authorities to be the perpetrator of the crime. *See Jones*, 917 S.W.2d at 624; *State v. Simms*, 810 S.W.2d 577, 582 (Mo. App. E.D.1991). Such an implicit message is not impermissibly suggestive. *Jones*, 917 S.W.2d at 624.

■ Defendant also argues that the jailhouse lineup was impermissibly suggestive, as at least two of the inmates were several inches taller than the five foot eight to five foot ten inch assailant described by Wilson to the police on the day of the attack. A jailhouse lineup is not impermissibly suggestive simply because the individuals comprising it are of different heights. *State v. Anthony*, 857 S.W.2d 861, 867 (Mo.App. W.D.1993). The police are not required to act as theatrical casting agents. *State v. Bullington*, 684 S.W.2d 52, 55 (Mo.App. W.D.1984). The record shows that the authorities in the instant case went to reasonable efforts to find physically similar individuals for the lineup. All of the individuals in the lineup and in the photo array had brown hair and mustaches and wore orange. A small height difference alone does not make the lineup impermissibly suggestive.

■ Lastly, Defendant argues that the jailhouse lineup was impermissibly suggestive as Defendant was identified by his lineup number and told to "look up" by the authorities present. Defendant contends that the statement "look up" when compounded with the fact that he was looking down in the earlier photographic array shown to Wilson gave the unmistakable impression that he was the assailant. The record reveals, however, that everyone in the lineup was issued a general command to look up, as the purpose of the lineup was to allow Wilson to see the men's eyes. Everyone else looked up except Defendant. A second command to look up was again given, and Defendant remained looking down. Only after repeating the command twice did the authorities call Defendant by his number and tell him specifically to look up. Referring to an individual in a lineup by number and telling him to "look up" after he has repeatedly failed to respond to a general command does not rise to the level of impermissible suggestiveness.

■ Defendant has failed to demonstrate that the pre-trial identification procedure was impermissibly suggestive; therefore, we need not evaluate the reliability of the in-court identification. *Vinson*, 800 S.W.2d at 446; *State v. Smith*, 949 S.W.2d 901, 904 (Mo.App. S.D.1997). However, even assuming the identification procedure was impermissibly suggestive, we would still find the admission of the identification testimony proper, as it was reliable. Wilson had ample opportunity to view Defendant. Wilson sat in the front seat with Defendant as he drove from Wal–Mart to Table Rock Dam, a twenty-minute drive. Wilson testified that she looked into Defendant's eyes several times during the drive and that her view of

Defendant was unhindered. Wilson further testified that, as a bank employee, she had been trained to look carefully at an assailant and that because of such training, she examined Defendant with a high degree of scrutiny in order to remember distinguishing characteristics. Wilson also gave an accurate description of Defendant to the police shortly after the crime, noting his general height and build, as well as his hair and mustache color. In addition, Wilson was certain both in her in-court and out-of-court identifications that Defendant was the assailant. In court, she stated that she had "no doubts" that Defendant was the man who kidnapped her. The short interval of time, nineteen days, between the crime and Wilson's identification of the Defendant also made the identification more reliable.

Defendant's motion to suppress the in-court and out-of-court identifications was properly denied. Sufficient evidence exists in the record to show that the identification procedure used by the authorities was not impermissibly suggestive and that the identification was reliable. Therefore, Defendant's first point must fail.

In Defendant's second point, he contends that the trial court abused its discretion in overruling defense counsel's motion for a mistrial, as he was removed from the courtroom when he attempted to speak in violation of his right to due process and a fair trial. Defendant argues that a mistrial is the only possible remedy that can cure the prejudice that was created when he was forcibly removed from the courtroom in the presence of the jury.

Declaration of a mistrial is an extreme remedy that will only be granted in extraordinary circumstances. *State v. Feltrop*, 803 S.W.2d 1, 9 (Mo. banc 1991), *cert. denied*, 501 U.S. 1262, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991). "Such a decision is left to the discretion of the trial court because the trial court is in the best position to observe the impact of the problematic incident." *State v. Roberts*, 948 S.W.2d 577, 605 (Mo. banc 1997), *cert. denied*, 522 U.S. 1056, 118 S.Ct. 711, 139 L.Ed.2d 652 (1998). Appellate review, therefore, is limited to a determination of whether as a matter of law the trial court abused its discretion in not declaring a mistrial. *State v. Bringleson*, 905 S.W.2d 882, 888 (Mo.App. S.D.1995).

A defendant in a criminal trial has the constitutional right to be present in the courtroom during every stage of the trial. *Illinois v. Allen*, 397 U.S. 337, 338, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). This right however can be lost if a defendant "insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." *Id.* at 343, 90 S.Ct. 1057. In dealing with a disruptive defendant, the trial court may bind and gag him, cite him for contempt, or take him out of the courtroom until he promises to conduct himself properly. *Id.* at 343–344, 90 S.Ct. 1057; *State v. Sahakian*, 886 S.W.2d 178, 180 (Mo.App. E.D.1994). A trial court is given sufficient discretion in determining what constitutes a disruption and in deciding what actions to take when confronted with a disorderly defendant. *Allen*, 397 U.S. at 343, 90 S.Ct. 1057.

In the instant case, after closing arguments had concluded, Defendant stood up and attempted to speak to the trial judge. Defendant was told to sit down and be quiet four times during the exchange that preceded his removal from the courtroom. He refused to comply and the trial court ordered him removed. Six officers were needed to subdue Defendant, who refused to leave the courtroom peacefully and continually cursed at the officers.

While the trial court did not specifically warn Defendant that his outbursts would result in his removal from the courtroom, the trial court did try numerous times to bring Defendant's behavior under control. Early on in the proceedings, Defendant had been cautioned to remain quiet. At that time, the trial court warned Defendant that his counsel was there to speak

for him, but he continued to speak, interrupting proceedings twice more. The trial court ignored these interruptions, and the trial continued. It was only at the conclusion of closing arguments, after repeatedly interrupting again, that the trial court had him removed from the courtroom.

The trial court did not abuse its discretion in failing to grant Defendant's motion for a mistrial. The trial court was "not obliged to reward [Defendant] for his outburst." *State v. Olinghouse*, 605 S.W.2d 58, 70 (Mo. banc 1980). Any prejudice that may been imparted to the jury was a result of Defendant's own misconduct. Defendant did not have the right to be present in the courtroom when he repeatedly disrupted the proceedings and failed to heed the trial court's warnings to remain silent. The trial court was more than tolerant in dealing with Defendant's outbursts, and its removal of Defendant was within its discretion. Therefore, Defendant's second point must also be denied.

The judgment of the trial court is affirmed.

MONTGOMERY, P.J., and BARNEY, J., concur.