Johnny STIDUM, Movant–Appellant,

v.

STATE of Missouri, Respondent–Respondent.

No. SD 31076.

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 30, 2011.

---

1. All rule references are to Missouri Court Rules (2011), unless otherwise specified.

2. Our holding does not address the merits of Appellant's points.

Mark A. Grothoff, Columbia, MO, for Appellant.

Chris Koster, Attorney General, and, Timothy A. Blackwell, Assistant Attorney General, Jefferson City, MO, for Respondent.

DON E. BURRELL, Presiding Judge.

Johnny Stidum ("Movant") appeals the motion court's denial, after an evidentiary hearing, of his Rule 29.15[1] motion to set aside his convictions. Movant was convicted after a jury trial of first-degree robbery, armed criminal action, and second-degree robbery. Movant, who was charged with and found to be a persistent offender, was subsequently sentenced to serve concurrent terms of 20, 10, and 20 years in the Department of Corrections. We affirmed Movant's judgment of conviction and sentence on direct appeal in *State v. Stidum,* 276 S.W.3d 910 (Mo.App. S.D. 2009).

Movant's sole contention on appeal is that he was denied effective assistance of counsel when his attorney ("trial counsel")

1. All rule references are to Missouri Court Rules (2011).

asked one of the state's witnesses, a police officer, if he was aware that a man named Danny Wilson "had pled guilty to this robbery." On re-direct examination, the officer answered, "That's correct[,]" when the prosecutor asked him if Mr. Wilson had pleaded guilty "for acting as an accomplice with [Movant.]"

Movant asserts that trial counsel's question "unreasonably adduc[ed] irrelevant and prejudicial hearsay evidence at trial that co-defendant Danny Wilson had pled guilty to the charges, without investigating the circumstances of that plea, which opened the door for the state to adduce that Wilson pled guilty to acting in concert with [Movant]." Movant claims that, "absent such evidence, a reasonable probability exists that the outcome of [his] trial would have been different."

Because Movant failed to demonstrate such prejudice, the motion court's "judgment" denying post-conviction relief is affirmed.

## Applicable Principles of Review

■ The motion court's findings of fact and conclusions of law are presumed correct; we review them for clear error. *Zink v. State*, 278 S.W.3d 170, 175 (Mo. banc 2009); Rule 29.15(k). Clear error appears when a review of the whole record leaves us with "a definite and firm impression that a mistake has been made." *Id.* (quoting *Worthington v. State*, 166 S.W.3d 566, 572 (Mo. banc 2005)).

■ To prevail on his ineffective assistance claim, Movant must show that: 1) counsel failed to exercise the customary skill and diligence of a reasonably competent attorney in similar circumstances, *Childress v. State*, 248 S.W.3d 653, 654 (Mo.App. S.D.2008); and 2) but for trial counsel's deficiency, there is a reasonable probability that the result of the proceeding would have been different, *Moss v.*

*State*, 10 S.W.3d 508, 511 (Mo. banc 2000). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). "[S]imply showing that the alleged error had a conceivable effect on the trial outcome is not sufficient; instead, [Movant] must show that, absent the error, there is a reasonable probability that he would have been found not guilty." *Johnson v. State*, 189 S.W.3d 640, 645 (Mo.App. W.D.2006).

## Factual and Procedural Background

### The Offenses

On direct appeal, we summarized the evidence favorable to Movant's convictions as follows.

In June 2005, Aaron Reed, Sara Bennett, and Mr. Reed's mother had traveled from Oregon to Springfield, Missouri, to attend a convention. Mr. Reed and Ms. Bennett were leaving the Rail Haven Motel the evening of June 10 at approximately 11:00 p.m. when a burgundy van pulled behind them blocking their vehicle. The passenger in the van, a man, jumped out of the vehicle and pushed Mr. Reed against his vehicle. Reed felt a sharp object at his throat. The man who had jumped from the vehicle told Reed he would slit his throat. He demanded Reed's wallet. Mr. Reed gave the assailant his wallet.

At about the same time, the driver went to Ms. Bennett. He attempted to grab her purse. She initially resisted, but when she realized the other man had a knife at Reed's throat, she released her purse.

As the attackers left, Reed saw the license plate on the back of their van and committed the number on the plate to memory. The police were called and

provided with a description of the men and the license number of the van. The passenger in the van was a large black man with a shaved head. The driver was a short white man with a shaved head.

A records check revealed that the license plate number Mr. Reed gave was registered to [Movant] on a 1993 Dodge Caravan. The physical description on [Movant's] driver's license matched the description Reed had provided police. [Movant] was later arrested while driving the burgundy van.

A list of addresses was found in [Movant's] van. One was a Cherry Street address. Police located the address and found Danny Wilson there. Danny Wilson matched the description of the driver of the van. Reed identified [Movant] and Wilson from photograph lineups as the men who took his wallet and Ms. Bennett's purse.

*Stidum,* 276 S.W.3d at 912.

Mr. Reed also identified Movant at trial as the person who had robbed him. Ms. Bennett did not testify at trial, but the transcript of her preliminary hearing testimony was read to the jury. It revealed that Ms. Bennett identified Movant at the preliminary hearing as the person who had held a knife to Mr. Reed's neck.

### References to Mr. Wilson During Opening Statements

The prosecutor told the jury it would hear evidence that Mr. Wilson was living on Cherry Street, that he matched the description given by the victims for the Caucasian robber, and that Mr. Reed had identified Mr. Wilson as one of the robbers in a photographic line-up. The prosecutor said that at the end of the trial he would be asking the jury to find Movant guilty of robbing Mr. Reed by using a dangerous instrument and "find [Movant] guilty of

robbery in the second degree by acting as an accomplice for Danny Wilson for him to steal the purse that belonged to Sara Bennett."

In his opening statement, trial counsel stated, "The evidence you're going to hear, you're going to see that [Movant's] biggest mistake was having Danny Wilson as a friend, lending his van out to someone like Danny Wilson." Trial counsel went on to inform the jury that it would hear about a statement Movant gave to the police which said that while he was not involved in the robbery, he could not say that his van was not involved in the robbery.

Trial counsel also said the jury would hear how the police ultimately located Mr. Wilson, that Movant knew Mr. Wilson, and that Mr. Wilson was white. He also told the jury, "Danny Wilson was arrested, Danny Wilson pled guilty to this crime. Danny Wilson committed this robbery. Was Danny Wilson alone on the night of June 10th, no, but he was not with [Movant]."

### Evidence of Mr. Wilson's Guilty Plea

Springfield Police officer Scott Kamykowski testified about his investigation of the robberies. Officer Kamykowski testified that when he interviewed Movant, Movant told him that he was not involved in the robberies but could not say that his van was not involved. Movant refused to name the person who had used his van that night. A search of Movant's van yielded a paper with names, phone numbers, and an address on it. The address listed on the piece of paper was Mr. Wilson's address. Officer Kamykowski, who went to investigate the address on Cherry Street, described to the jury the physical appearance of the man he encountered there and identified as Mr. Wilson.

On cross-examination, Officer Kamykowski responded to questions about who might have had Movant's van on the night of the robberies.

Q. And when talking about this van you asked [Movant], "Well, who was driving your van that night, who had your van?" That was one of your questions?

A. That was, yeah.

Q. And he never did give you a name, is that right?

A. That's correct.

Q. And he told you he was worried about you harassing certain individuals?

A. Yes, when I asked him for his—you know, for—I asked him to, "Help me out, you know, to get you an alibi," and he said, "I'm not going to give you anything 'cause I don't want you harassing anyone."

Q. When you asked him about white guys he knew, he told you he knew a white guy that lived on East Cherry, correct?

A. That's correct.

Q. Turned out Danny Wilson lived on East Cherry?

A. That's correct.

Upon further cross-examination, Officer Kamykowski testified that Movant told him he felt stupid for having allowed other people to use his van. Officer Kamykowski admitted that Movant had consented to the search of his van and residence and that that search did not reveal any of the items taken in the robberies or any clothing matching that described by Mr. Reed.

Trial counsel then asked Officer Kamykowski about Mr. Wilson's guilty plea.

Q. At some point in time Danny Wilson was arrested for this, correct?

A. Danny Wilson was arrested on some other charges and then I located him where he was arrested on additional warrants and robbery charges.

Q. Are you aware that he had pled guilty to this robbery?

[Prosecutor]: Judge, I'm going to object.

THE COURT: You need to make a record, sir?

[Prosecutor]: No, sir.

THE COURT: All right. You may proceed. Objection will be overruled.

[Defense counsel]: I may ask the question?

THE COURT: It's already asked.

Q. You may answer the question.

A. Yes.

THE COURT: It's already been asked and answered. Next question.

[Defense counsel]: I have no further questions.

During his re-direct examination of Officer Kamykowski, the prosecutor returned to the topic of Mr. Wilson's guilty plea, followed shortly thereafter by trial counsel's re-cross.

Q. [Defense counsel] asked you some questions about Danny Wilson and his charge that he pled guilty to. You developed Danny Wilson as the suspect in connection with [Movant] in this case?

A. That's correct.

Q. And did you follow Mr. Wilson's case as a result?

A. Yes.

Q. And you've testified that he did plead guilty in the case against him?

A. Yes, he did.

Q. And that was for acting as an accomplice with [Movant]?

A. That's correct.

[Prosecutor]: No further questions, Your Honor.

THE COURT: Recross.

### RECROSS–EXAMINATION:

**By [Defense counsel]:**

Q. What Danny Wilson pled guilty to was robbing Sara Bennett, actually stealing the purse from her, correct?

[Prosecutor]: Judge, I'm happy to provide the court file in Mr. Wilson's case and the [c]ourt can take judicial notice of it.

THE COURT: Thank you, sir.

[Prosecutor]: I don't know if the detective knows the answer to that question.

(By [Defense counsel])

Q. Do you not know the answer to that?

A. I don't know exactly what's in the court docket.

Q. Okay. That's fine. Back to the whole van issue. He did tell you his van could have been involved—

A. Yes.

Q. —correct?

A. Yes.

### *Evidence from the Post– Conviction Hearing*

At the hearing on his amended Rule 29.15 motion, Movant testified that he did not ask defense counsel to inform the jury that Mr. Wilson had pleaded guilty to being one of the robbers. Movant testified that he did not know what Mr. Wilson said during his guilty plea.

Defense counsel testified that the theory of defense was "[m]istaken identity." He then gave the following reason for raising Mr. Wilson's guilty plea during Movant's trial:

We were pretty much stuck with the fact that [Movant's] van was used in this robbery. Furthermore, we had a statement that was admitted into evidence by [Movant] that he had lent out his van that night. [Movant] was not in the van, but he had lent it out. I believe if memory serves, he had said that he had lent it out to a Dan. Knowing that the co-defendant was a Dan, Danny Wilson, I believe, and had been charged and had at that point I knew [sic] that he had pled guilty, the hope was to at least let the jury know that that part of his statement was correct, that the driver was a Dan and it was a person he had lent the van to, and that that person had been charged and was convicted and pled guilt [sic] to the robbery.

Defense counsel did not obtain a copy of Mr. Wilson's guilty plea transcript before cross-examining officer Kamykowski, and when he cross-examined the officer, he was not aware that Mr. Wilson had "pled guilty to acting in concert with [Movant] to commit first-degree robbery against Aaron Reed[.]" Movant's post-conviction attorney did not ask trial counsel if he would have decided against bringing up Mr. Wilson's guilty plea if he had read the transcript of it before questioning Officer Kamykowski.

The motion court took judicial notice of Movant's criminal case file, including the trial transcript. The transcript from Mr. Wilson's guilty plea hearing, along with the felony complaint and information, were offered into evidence by Movant's post-conviction counsel and received without objection. The transcript and information indicate that on August 18, 2006, Mr. Wilson pleaded guilty to the first-degree robbery of Mr. Reed. The charges of robbery in the second degree and armed criminal action, both allegedly committed against Ms. Bennett, were dismissed. During Mr.

Wilson's plea hearing, the prosecutor stated:

> [W]hile Mr. Wilson is pleading guilty to robbery in the first degree for the actions by [Movant] involving the wallet of Mr. Reed, Mr. Wilson is—or the state can proceed under accomplice liability for Mr. Wilson, that even though he was taking Ms. Bennett's purse, even though [Movant] was stealing the wallet by knife point, Mr. Wilson, as the driver of the van, is—also can be charged and convicted of that.

The transcript of Mr. Wilson's plea is file-stamped June 19, 2007—the same day Officer Kamykowski testified at Movant's trial.

### The Motion Court's Findings

The motion court's findings of fact and conclusions of law contained, *inter alia,* the following:

> Here, Movant's trial counsel testified that his strategy was misidentification of Movant and that two other people were actually responsible for the crime. Trial counsel testified that they were stuck with the fact that Movant's van was used and Movant's statement that he lent it out to a Dan. Counsel wanted to let the jury know that Movant's statement was correct and that a Dan had committed the offense. Movant's trial counsel testified he was not aware the co-defendant, Danny Wilson, pled guilty as an accomplice. The records shows [sic] that Danny Wilson pled guilty on August 18, 2006, but the felony information that Danny Wilson pled guilty to does

not show any accomplice liability language. In addition, the transcript of the guilty plea was not filed with the [c]ourt until June 19, 2007, after Movant's trial had already begun. Not based on hindsight, but counsel's perspective at the time, his actions were reasonable.

Saliently, the motion court also found that "[i]n any event, Movant did not prove he was prejudiced." The motion court reviewed the other evidence at trial and found that "[b]ased on the overwhelming evidence presented at trial of Movant's guilt, the outcome of the trial would not have been different."[2] Based on its findings, the motion court then denied post-conviction relief in the order Movant now timely challenges on appeal.

### Analysis

 Rule 29.15(a) provides that "ineffective assistance of trial and appellate counsel" may be included in a claim that a conviction sustained after a jury trial was in violation of the movant's state and/or federal constitutional rights. Movant contends trial counsel "failed to act as a reasonably competent attorney would under the same or similar circumstances" when he elicited "irrelevant and prejudicial hearsay evidence at trial" concerning Mr. Wilson's guilty plea "without investigating the circumstances of that plea" and defense counsel's questions "opened the door for the state to adduce that Wilson pled guilty to acting in concert with [Movant]."[3] Movant contends he was prejudiced by this deficient performance because "absent such evidence, a reasonable probability ex-

---

2. Because the same judge presided over both Movant's jury trial and subsequent post-conviction hearing, he was in a particularly good position to weigh the balance of the evidence against Movant.

3. " 'The doctrine of opening the door allows a party to explore otherwise inadmissible evi-

dence on cross-examination when the opposing party has made unfair prejudicial use of related evidence on direct examination.' " *Barnett v. State,* 103 S.W.3d 765, 773 n. 5 (Mo. banc 2003) (quoting *United States v. Durham,* 868 F.2d 1010, 1012 (8th Cir.1989)).

ists that the outcome of [Movant's] trial would have been different."

Movant acknowledges that he must prove both that trial counsel did not exercise the skill and diligence of a reasonably competent attorney and that, but for this failure on the part of trial counsel, the outcome of his trial probably would have been different. As earlier noted, "[t]he fact that an error by counsel might have had some conceivable effect on the outcome is not sufficient." *Richardson v. State*, 719 S.W.2d 912, 915 (Mo.App. E.D.1986).

Movant cites *State v. Browner*, 587 S.W.2d 948, 955 (Mo.App. E.D.1979), for the principle that a non-testifying co-defendant's confession to the charge is inadmissible hearsay, and Movant asserts "it is well-established in Missouri law that evidence of a codefendant's related criminal disposition, including any plea agreement, may not be used as substantive evidence to prove a defendant's guilt or innocence[,]" quoting *State v. Green*, 136 S.W.3d 837, 841 (Mo.App. S.D.2004). These cases do not stand for the proposition that any reference to such information is prejudicial *per se* so as to require a reversal of a conviction. In *Green*, it was the prosecutor who first brought up the co-defendant's guilty plea, drawing an immediate objection from defense counsel. *Id.* at 840. After finding the reference improper, we held it did not constitute reversible error because defense counsel also later referenced the same guilty plea information and

there was overwhelming evidence of the defendant's guilt. *Id.* at 841.

Here, Movant was not automatically prejudiced by defense counsel's reference to Mr. Wilson's guilty plea or the prosecutor's statement that Mr. Wilson pleaded guilty as Movant's accomplice. Both sides made it clear from their opening statements that Mr. Wilson was one of the robbers. The prosecutor's position was that Movant acted as Mr. Wilson's accomplice in stealing Ms. Bennett's purse. Defense counsel's tack was that Mr. Wilson pleaded guilty to robbery in connection with the incident but that his accomplice was someone other than Movant.[4]

We do not dispute that it may not have been necessary to prove that Mr. Wilson actually pleaded guilty in order to argue that he and someone other than Movant were the robbers, but doing so did, perhaps, add some additional corroboration to the defense theory, and "[a] decision regarding trial strategy is not to be judged ineffective constitutionally merely because in retrospect it may seem an error in judgment." *State v. Hamilton*, 892 S.W.2d 774, 785 (Mo.App. S.D.1995). In any event, we do not need to determine whether trial counsel's strategy was reasonable because the motion court correctly determined that Movant failed to demonstrate that the outcome of his trial would probably have been different if that strategy had not been employed.[5]

4. After the evidence came in, the prosecutor referred in closing argument to the jury's instruction regarding accomplice liability and contended that Mr. Wilson was Movant's accomplice. Defense counsel continued with the theory of mistaken identity by arguing various points during closing argument regarding the victims' ability to observe and recall what happened, and that "[i]f [Movant] had taken his van out that night and he was involved in this, wouldn't he have been driving his own van?" Defense counsel insisted

that Movant lent the van to Mr. Wilson and that Mr. Wilson was driving it at the time of the robberies. Defense counsel went on to argue that Movant "didn't have any idea what Danny had done with his van four days earlier. He had no idea what Danny and this other guy had went out and done. He did not know."

5. In itself, the testimony about Mr. Wilson's plea was not especially compelling. Officer Kamykowski's answer to the prosecutor's fol-

■ Movant claims there was a reasonable probability that the *outcome of his* case would have been different in the absence of the officer's testimony about Mr. Wilson's guilty plea without making any attempt to demonstrate why this would be so. Movant claims no deficiency in the remaining evidence of Movant's guilt that would undermine confidence in the outcome. *See Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. We cannot say that the motion court's characterization of the remaining evidence of guilt as "overwhelming" was clearly erroneous. Movant was identified by Mr. Reed as the robber in both a photographic lineup and at trial. Ms. Bennett identified Movant in open court at his preliminary hearing as the person who had robbed Mr. Reed at knife-point. And

Movant's van was identified by description and license plate number as the vehicle used in the robberies.

We are not firmly convinced that the motion court was wrong in determining that Movant failed to prove the outcome of his trial would have been different absent trial counsel's alleged ineffective assistance. Movant's point is denied, and the denial of postconviction relief is affirmed.

RAHMEYER and LYNCH, JJ., Concur.

---

low-up question confirmed that Mr. Wilson's guilty plea "was for acting as an accomplice with [Movant]." But the overall impact of his testimony on this point was weakened by defense counsel's recross-examination in which it was adduced that the officer was unable to

say whether Mr. Wilson's precise offense was robbing Ms. Bennett and that he did not "know exactly what's in the court docket." Mr. Wilson did not testify at Movant's trial and the jury did not see a copy of the charges against him or a transcript of his guilty plea.