**STATE of Missouri, Respondent,**

v.

**Jack HALEY, Jr., Appellant.**

**No. WD 59380.**

Missouri Court of Appeals, Western District.

Feb. 26, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 2, 2002.

Application for Transfer Denied May 28, 2002.

Michael D. Sanders, Independence, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Andrea Mazza Follett, Asst. Atty. Gen., Jefferson City, for respondent.

Before HARDWICK, P.J., ULRICH, J. and HANNA, SR. J.

LISA WHITE HARDWICK, Judge.

Jack Haley was convicted of first degree assault and armed criminal action for shooting two people outside a Kansas City nightclub. He was sentenced to a total of twenty-seven years imprisonment. Haley appeals the conviction, raising six points of error. We affirm the judgment of the trial court.

### Factual and Procedural History

We view the facts in the light most favorable to the jury verdict, as the sufficiency of the evidence is in dispute. On October 29, 1999, Jack Haley, his cousin John Smith, and four other friends and relatives, went to the Odyssey nightclub. They arrived about 11:00 p.m. after drinking alcoholic beverages at a nearby casino. Around 1:30 a.m., an Odyssey employee requested Smith to leave the nightclub when he became loud and belligerent. Smith refused, and two doormen removed him from the nightclub. Smith's sister, Rachel, followed behind. Outside the bar, a fight broke out between Smith and the doormen. Rachel intervened to help her brother but was subdued by the doormen.

Meanwhile, Haley left the nightclub and retrieved Smith's Chevrolet Blazer. He pulled up to the curb in front of Odyssey's with the Blazer's passenger door facing the establishment. Haley exited the vehicle and approached the doormen, who initially restrained and then released him. Haley returned to the Blazer, opened the driver's side door and reached into the area behind or under the driver's seat. Moments later, witnesses at the scene

heard gunshots and saw Haley holding a gun. Two witnesses saw Haley point his gun toward the nightclub. Two other witnesses saw Haley shoot the gun from the passenger side of the vehicle. A bar patron and a doorman were hit by the gunfire and seriously injured. The patron, Shawn Mason, suffered nerve damage from a gunshot wound to the neck. Kenny Grigsby, a doorman, was shot twice in the chest and required emergency surgery to remove portions of his damaged lung.

Immediately after the shooting, Haley and Smith left the scene with Haley driving Smith's Blazer. They were pursued by police and stopped moments later. After detaining Haley and Smith, the officers searched the vehicle and found a box of bullets and a gun with blood on it.

During the trip to the police station, Smith asked the officers if he had killed anyone and said he had been enraged over the doormen's treatment of his sister. Several hours later, he gave a videotaped confession, admitting he fired the gun outside the nightclub. Smith was released by the police and was not charged, despite his confession. He recanted the confession a few days later, claiming he was intoxicated and did not remember making any statements to the police.

The police continued to investigate and, based on the eyewitness accounts, eventually arrested Haley for the shooting. Haley was charged with two counts of first-degree assault, § 565.050.1,[1] and two counts of armed criminal action, § 571.015.1. He was convicted by a jury on all four counts. After denial of his motion for new trial, Haley was sentenced to concurrent terms of fifteen years imprisonment on each assault charge, to be served consecutively with concurrent terms of twelve years on each armed criminal action

charge, for a total of twenty-seven years imprisonment. Haley appeals.

### Issues on Appeal

### Point I: Burden–Shifting

Haley contends the trial court erred in failing to grant a mistrial when the prosecutor made improper "burden-shifting" statements during closing argument. He claims the prosecutor's comparison of the number of witnesses for the State and the defense, as well as the prosecutor's statements indicating there were no eyewitnesses to support the defense theory, violated his due process rights by implying that the defendant had the burden of proof instead of the presumption of innocence.

A trial court has considerable discretion in controlling closing arguments, and its ruling is reversible only for an abuse of discretion. *State v. Wallace,* 43 S.W.3d 398, 403 (Mo.App. E.D.2001). Trial counsel is also entitled to wide latitude in making summation arguments. *State v. Nicklasson,* 967 S.W.2d 596, 615 (Mo.banc 1998). Since mistrials are a drastic remedy granted only in extraordinary circumstances, there must be prejudice to the defendant which cannot be removed by any other means. *State v. Berry,* 916 S.W.2d 389, 393 (Mo.App. S.D.1996).

At Haley's trial, the court overruled defense counsel's objections to the following closing argument by the prosecutor:

> What's the obvious motive of the defense witnesses, his family? Speaking of that, the state put on fourteen witnesses, the defense put on five. Four of the five had.... [Defense counsel objects on grounds of burden-shifting, and court overrules.] And that isn't my point. ....[M]y point is four of the five wit-

---

**1.** All statutory references are to the Revised Missouri Statutes (2000).

nesses have convictions .... mom, dad, brother and defendant.

Defense counsel also objected to the following comments by the prosecutor during the closing rebuttal:

And you can bet if there was a single witness out there that said that the gentleman in the Cardinals jersey [Smith] was the one that fired the shots that night, they would be right here.

The objection was sustained, and the trial court instructed the jury to disregard the argument.

■ The State's closing argument comparing the number of prosecution and defense witnesses focused on the weight the jury should give the relative testimony. The prosecutor pointed out that the State presented fourteen witnesses and the defense presented five witnesses, four of whom had criminal convictions. Prior criminal conduct is a factor the jury could reasonably consider in evaluating the reliability of the conflicting witness testimony. Thus, the prosecutor's comments were proper, as they addressed the credibility of Haley's defense and did not deny him the presumption of innocence. *State v. Juarez,* 26 S.W.3d 346, 357–58 (Mo.App. W.D. 2000).

■ As to the State's closing argument concerning the lack of defense witnesses to say Smith was the shooter, the prosecutor was commenting on the absence of evidence to support Haley's defense. The State does not improperly shift the burden of proof by referring to a defendant's failure to offer evidence to bolster his case theory. *State v. Chaney,* 967 S.W.2d 47, 56 (Mo.banc 1998). The trial court is in the best position to assess the effect of a challenged argument on the

jury. *State v. Castillo,* 853 S.W.2d 381, 386 (Mo.App. E.D.1993). Here, the court sustained Haley's objection and ordered the jury to disregard the statement. Any alleged prejudice was effectively removed by such instruction. *Berry,* 916 S.W.2d at 394. Point I is denied.

## Point II: Proper Scope of Cross–Examination

Haley contends the trial court erred in allowing cross-examination that exceeded the scope of his direct examination. Before Haley testified at trial, the court denied his motion *in limine* to confine the State's cross-examination to matters raised during his direct examination. Haley thereafter testified on direct that he was not involved in the shooting and did not know who fired the shots. The prosecutor cross-examined Haley about a gathering the day after the shooting, where his family and friends discussed what happened at the Odyssey. Haley acknowledged he attended the gathering but testified he still did not know who fired the gun outside the night club.

Haley argues that the subject of the family and friends discussion was outside the scope of direct examination and irrelevant as to the charges against him. He contends the cross-examination was unfair in that, through "slick wording," the prosecutor was able to imply that Haley was guilty because he did not admit to hearing about Smith's confession although he attended the family gathering where the confession was discussed.

■ We review the trial court's ruling on the scope of cross-examination for an abuse of discretion.[2] *State v. Ray,* 945

---

2. The State has argued plain error review is necessary because defense counsel did not make a "continuing objection" to the cross-examination. We find that defense counsel preserved appellate review of this issue by objecting to the scope of cross-examination

S.W.2d 462, 467 (Mo.App. W.D.1997). "The scope of cross-examination of a defendant is not limited to a categorical review of matters stated or covered on direct-examination but may cover all matters within a fair purview of the direct-examination." *State v. Watts*, 919 S.W.2d 287, 291 (Mo.App. W.D.1996). The State may ask the defendant about matters "only generally referred to" in direct testimony. *Id.* On appeal, an appellant "cannot complain about cross-examination as to matters first brought into the case by the accused's testimony on direct examination." *State v. Glessner*, 918 S.W.2d 270, 281 (Mo.App. S.D.1996).

■ The issue of Haley's knowledge of the Odyssey shooting was clearly raised during direct examination. Haley testified he did not know who fired the shots. It was therefore appropriate for the State to cross-examine Haley about his involvement in the subsequent gathering of family and friends where the shooting was discussed. Haley's attendance at the meeting was directly relevant to whether he had any knowledge about the identity of the shooter. The trial court did not abuse its discretion in allowing cross-examination that was well within the fair purview of Haley's testimony on direct. Point II is denied.

**Point III: Jury Instruction on Witness Credibility**

■ Haley asserts error in the trial court's refusal to give his proffered jury instruction regarding witness credibility and observation. The proffered instruction was modeled after Eighth Circuit Pattern Instruction 4.08 and arose from *United States v. Telfaire*, 469 F.2d 552 (D.C.Cir.1972). The State responds that

the trial court properly instructed the jury on the believability of witnesses pursuant to MAI–CR3d 302.01, and that Missouri courts have rejected *Telfaire* instructions. *State v. Gilmore*, 797 S.W.2d 802, 809 (Mo. App. W.D.1990). Unless the trial court abused its discretion in refusing to give the non-MAI *Telfaire* instruction, we must affirm its ruling. *State v. Borden*, 605 S.W.2d 88, 93 (Mo.banc 1980).

"Missouri courts have unequivocally rejected the argument that it is error for a trial court to refuse to submit additional cautionary instructions to the jury concerning eyewitnesses modeled after those contained in *Telfaire*, especially where the Missouri Approved Instructions adequately present the defendant's theory of innocence." *Gilmore*, 797 S.W.2d at 809; *State v. Briscoe*, 913 S.W.2d 812, 816 (Mo.App. W.D.1995). In felony cases, Rule 27.02(e) requires trial courts to give MAI–CR3d 302.01, which contains the following instruction regarding witness credibility:

> In determining the believability of a witness and the weight to be given to testimony of witnesses, you may take into consideration the witness' manner while testifying; the ability and opportunity of the witness to observe and remember any matter about which testimony is given; and any interest, bias, or prejudice the witness may have; the reasonableness of the witness' testimony considered in the light of all the evidence in the case; any other matter that has a tendency in reason to prove or disprove the truthfulness of the testimony of the witness.

The Notes on Use (3) for MAI–CR3d 302.01 prohibit any other or additional instructions regarding the "believability of

---

when the prosecutor began to question Haley about the gathering of family and friends. Plain error review is unwarranted, as the objection was timely made, at the earliest

opportunity, when the testimony was first offered. *State v. Evenson*, 35 S.W.3d 486, 491 (Mo.App. S.D.2000).

witnesses, or the effect, weight or value of their testimony."

■ The State's felony assault and armed criminal action case against Haley was primarily based on eyewitness testimony identifying him as the shooter. Given the felony charge, the trial court was obligated to give MAI–CR3d 302.01 and properly did so. Haley requested a *Telfaire* instruction that was far more detailed and case specific than the MAI instruction.[3] Haley failed to make any showing that the mandated MAI 302.01 instruction did not adequately address his defense theory of witness misidentification. We find no abuse of discretion in the trial court's rejection of the *Telfaire* instruction, as it is strongly disfavored under Missouri law and prohibited without any showing of special application. Point III is denied.

### Point IV: Sufficiency of the Evidence

Haley challenges the sufficiency of the evidence to support his conviction for first degree assault and armed criminal action. Our review is limited to a determination of whether there was sufficient evidence from which a reasonable juror could find the defendant guilty beyond a reasonable doubt. *State v. Clay*, 975 S.W.2d 121, 139 (Mo.banc 1998). We must accept as true all of the evidence and inference favorable to the State, disregarding all evidence and inferences to the contrary. *State v. Grim*, 854 S.W.2d 403, 405 (Mo.banc 1993).

Haley was found guilty on two counts of class A felony first degree assault and two counts of armed criminal action. First degree assault occurs when a person "attempts to kill or knowingly causes or attempts to cause serious physical injury to

another person." § 565.050.1. An assault is a class A felony if it "inflicts serious physical injury on the victim." § 565.050.2. A person may be charged with armed criminal action for commission of a felony with the use of a dangerous instrument or deadly weapon. § 571.015.1.

Haley argues there was substantial evidence that he was not the shooter and there were too many discrepancies in the State's evidence to deem its witnesses credible. Although several of the State's witnesses identified Haley as the shooter, none recall the same details or chronology. Haley points out that Smith confessed to the crime, giving details known only by the shooter. The confession was consistent with Smith's comments immediately following the shooting and was corroborated by four witnesses who heard similar admissions by Smith. The vehicle and gun were owned by Smith, and Haley asserts Smith was motivated to shoot because he had been forcibly removed from the bar and was angry about the doormen's treatment of his sister. Haley further argues he and Smith are similar in appearance, so much so that, after completing their investigation, the police arrested Smith upon the mistaken belief he was Haley. Thus, Haley suggests, the State's witnesses may also have been confused about the identity of the shooter.

■ Although Haley presented a viable defense, the State presented other evidence of his guilt that the jury could reasonably consider. Four witnesses testified they saw Haley looking for something in the Blazer just prior to the shooting. Two of the witnesses saw Haley point the gun at Odyssey and heard gunshots, while the

---

**3.** Haley's proposed *Telfaire* instruction included the following specific factors for assessment of witness credibility which are not included in MAI–CR3d 302.01: "the prevailing conditions at that time in terms of visibility and distance ... whether the witness had known or observed the person at earlier times ... [and] the length that elapsed between the occurrence of the crime and the next opportunity the witness had to see the defendant.

other two actually saw Haley fire the gun into the crowd. The jury was free to disregard Smith's confession, to judge the credibility of the various witnesses, and to believe the State's witnesses over those favoring Haley. *State v. Weeks*, 982 S.W.2d 825, 833 (Mo.App. S.D.1998). The State's evidence established that Haley fired a gun outside the Odyssey nightclub and shot two men, causing serious injury to both. This evidence was sufficient for the jury to find Haley guilty beyond a reasonable doubt of first degree assault and armed criminal action. Point IV is denied.

### Point V: Newly Discovered Evidence

Following his conviction, Haley filed a Motion for New Trial based on newly discovered evidence. The new evidence came from Regina Chancellor, another sister of John Smith, who testified at a hearing in support of Haley's new trial motion. Chancellor first came forward with information by contacting Haley's counsel several days after Haley was convicted of the shooting. At the new trial hearing, Chancellor testified that Smith telephoned from jail, following the Odyssey incident, to inform the family he was in trouble. Smith was crying during the phone call and inquired about the condition of his sister, Rachel. Smith told Chancellor he shot the person who "body-slammed" Rachel outside the nightclub. On cross-examination, Chancellor testified she didn't come forward earlier with this information because she forgot about the phone call from Smith until she heard about Haley's conviction.

The trial court denied Haley's motion for trial, finding that Chancellor's testimony was merely cumulative with other evidence of Smith's admissions and would not have produced a different case outcome. Haley contends the court erred in this ruling because Chancellor's testimony was not cumulative, rather it was new evidence of an additional confession made to Smith's own family when Smith was no longer intoxicated. He argues the inherent reliability of Chancellor's testimony, as Smith's sister, "very probably" would have led the jury to acquit Haley.

A trial court's ruling on whether newly discovered evidence warrants a new trial is reviewed by this court for an abuse of discretion. *State v. Stone*, 869 S.W.2d 785, 786–87 (Mo.App. W.D.1994). New trials based on newly discovered evidence are not favored. *State v. Magee*, 911 S.W.2d 307, 312 (Mo.App. W.D.1995). A defendant alleging newly discovered evidence must show that: (1) the evidence only came to light after trial; (2) the inability to discover this evidence before or during trial was not the result of dilatory efforts on the part of the defense; (3) the evidence is so material that its admission would probably lead to a different result in a new trial; and, (4) the evidence is not merely cumulative or to impeach the testimony of a witness. *Stone*, 869 S.W.2d at 786–87.

We agree with the trial court that Haley failed to show Chancellor's testimony was "not merely cumulative" on the issue of Smith's admissions. The jury saw Smith's videotaped confession that he fired a gun outside Odyssey's. Even though Chancellor is Smith's sister, her testimony was not likely to have any greater impact on the jury than seeing Smith himself admit to the crime. A detective who took and videotaped the confession testified Smith was not intoxicated when he gave the statement more than ten hours after the shooting. The jury also heard Jack Haley, Sr. and Mary Haley, who are Haley's parents and Smith's aunt and uncle, testify Smith confessed to the crime. The outcome of the trial would not have been different if Chancellor had testified be-

cause there was already substantial credible evidence of Smith's multiple confessions. Point V is denied, as the trial court did not abuse its discretion in rejecting the motion for new trial.

## Point VI: Motion to Strike Venireperson

▮▮▮▮ In his final point on appeal, Haley cites error in the trial court's denial of his motion to strike a venireperson for cause. The trial court has broad discretion in determining the qualifications of prospective jurors. *State v. Landers*, 969 S.W.2d 808, 810 (Mo.App. W.D.1998). We will not disturb its ruling on a challenge for cause unless it is clearly against the weight of the evidence and constitutes a clear abuse of discretion. Id. A party asserting an abuse of discretion has the burden of showing a real probability that he was thereby prejudiced. *State v. Stewart*, 859 S.W.2d 913, 917 (Mo.App. E.D. 1993). If a trial court reasonably concludes that a venireperson will yield any personal opinions and determine the issues under the law, the denial of the cause challenge will be upheld. *State v. Plummer*, 860 S.W.2d 340, 349 (Mo.App. E.D. 1993).

During *voir dire* Haley's counsel told the venire panel that Haley had a prior conviction for misdemeanor assault. Defense counsel explained that jurors could consider Haley's criminal past in assessing his credibility but not as evidence that he fired shots outside the Odyssey. Counsel probed the panel's understanding of this distinction as follows:

[Q.]: by defense counsel]:....Is there anyone who's going to say in the back of their mind, 'He was involved [sic] another assault, even if it was a misdemeanor, I'm weighing that in my mind when I'm deciding whether he's guilty of this assault?' Is there anyone ....that I should have any concerns about that, in the back of their mind? Mr. Long.

[A.]: by Venireperson Long]: I think that it goes back to what you said earlier, it depends on the material facts and it's hard for me to make a judgment with regards [sic] the case, just using your own words, until I hear the material facts. So, I don't know on that.

[Q.]: Okay. ....So, depending on how the evidence came in, that might be a factor, his prior assault might be a factor determining—that would weigh in your mind as to whether he's guilty of this.

[A.]: I—I don't know. It could be.

[Q.]: And Ms. Fenton.

[A. by Venireperson Fenton]: Yes, Number 3.

[Q.]: Is that the same position?

[A.]: Uh-huh.

. . . .

[Q.]: by the State]:.... Ms. Fenton, when [defense counsel] was asking you and you indicated that it was your belief similar to Mr. Long's with regard to the prior conviction. Is it—are you implying that if the Judge were to give you an instruction that his prior assault conviction could be used in assessing his credibility but not as substantive evidence, would you be able to follow that instruction?

[A.]: by Venireperson Fenton]: Yes, sir.

[Q]: Was your answer—were you—

[A]: Well, it enters your mind, oh, yes, he's been attached to this before, but if it's not entered in evidence, it's evidence of credibility.

[Q]: And if it's—

[A]: It's separate.

[Q]: And if the Judge tells you, you can use that in assessing credibility but you can't use it as substantive evidence—

[A]: Right.

[Q]:—would you be—

[A]: I understand that.

[Q]: And you could follow the distinction.

[A]: Yes, sir.

Based on Fenton's *voir dire* responses, defense counsel moved to strike her for cause. The trial court denied the challenge, and Fenton served on the jury panel.

On appeal, Haley claims the prosecutor's rehabilitative questioning was overly suggestive, leading Fenton to correct her initial "lack of understanding" about the evidentiary impact of the prior conviction. He further suggests Fenton was not impartial because she admitted knowing the prosecutor's wife and mother during earlier questioning. Fenton stated these acquaintances would not affect her ability to fairly hear and decide issues in the case. Nonetheless, Haley asserts the trial court should have stricken Fenton to protect his due process rights to a fair and impartial jury.

[25, 26] The qualifications of a prospective juror are not determined by a single response, but rest upon the *voir dire* as a whole. *State v. Rousan*, 961 S.W.2d 831, 839 (Mo.banc 1998). The totality of veni-reperson Fenton's *voir dire* responses indicated her ability to serve as a fair and impartial juror, despite her acquaintance with the prosecutor's family and any initial confusion about the evidentiary rules. Fenton gave verbal assurances that she understood her obligation to decide the case solely based on the facts and legal instructions. Based on her responses, the trial court reasonably found Fenton could yield her personal opinions and determine the issues under the law. Any doubts regarding the ruling must be resolved in the trial court's favor as it was in the best position to assess Fenton's qualifications for jury service. *State v. Smith*, 649 S.W.2d 417, 422 (Mo.banc 1983). Point VI is denied.

The judgment of the trial court is affirmed.

All concur.