**STATE of Missouri, Respondent,**

v.

**Johnny L. ALLEN, Appellant.**

**No. WD 69012.**

Missouri Court of Appeals,
Western District.

Dec. 2, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 27, 2009.

---

Melinda Kay Pendergraph, Columbia, MO, for appellant.

Shaun J. Mackelprang, Evan Buchheim, Jefferson City, MO, for respondent.

Before JOSEPH P. DANDURAND, P.J., HAROLD L. LOWENSTEIN and JAMES M. SMART, JJ.

JOSEPH P. DANDURAND, Judge.

Johnny L. Allen appeals his conviction following a jury trial for robbery in the first degree, section 569.020, RSMo 2000, and sentence of fifteen years imprisonment. Mr. Allen raises seven points on appeal. He claims the trial court erred in (1) admitting as evidence bib coveralls, which he claims were illegally seized; (2) admitting evidence of drugs and drug paraphernalia, which he claims was inadmissible evidence of other crimes; (3) admitting eyewitness identification evidence; (4) excluding expert witness testimony; (5) excluding as evidence the Department of Justice Guidelines on Eyewitness Evidence; (6) refusing his tendered jury instruction on eyewitness testimony; and (7) allowing two victim eyewitnesses to be present in the courtroom during a pre-trial hearing on motions to suppress evidence, over his objection. Point II is granted, the judgment of the trial court is reversed, and the case is remanded for a new trial.

## Facts

Viewed in the light most favorable to the verdict, the evidence presented at trial established the following facts:

On December 24, 2006, Stephanie Hopkins and Adam Hayes were working at a Movie Gallery store in Sedalia, Missouri. Shortly after 7:00 p.m., a man entered the store, walked to the counter, and demanded money from the cash register drawer. Mr. Hayes hesitated at first, because he thought the man was joking. After the man repeated the demand for money, Mr. Hayes put cash totaling about $200 into a bag and placed the bag on the counter. The man grabbed the bag and left the store, after which Mr. Hayes called the police.

A Sedalia police officer arrived and spoke to Ms. Hopkins and Mr. Hayes. According to these two eyewitnesses, the robber was a white male, 6 feet tall, in his late forties, with gray and silver facial hair. The robber wore tan or brown colored long-sleeved coveralls, and a stocking cap and gloves. During the robbery, he covered his face with one hand, while the other hand remained in his right hand pocket. The robber announced that he was armed, although he never displayed a weapon. Based on this information, police officers began an investigation.

In a separate investigation four days later, on the evening of December 28, 2006, Sedalia police officers executed a search warrant at the residence of Johnny L. Allen. The warrant had been issued in connection with reported thefts of newspaper vending machines. During the search, police officer Kelley Casto observed two pairs of bib coveralls and a jacket hanging in the garage where they could plainly be seen. Officer Casto had heard of a robbery, and after talking to another officer present at the search, knew some of the details of the Movie Gallery robbery, spe-

cifically that the suspect was wearing coveralls. Based on this information, the officers seized the coveralls.

Police officers arrested Mr. Allen contemporaneously with the execution of the search warrant. When police performed a search of Mr. Allen's person incident to arrest, they discovered a crack cocaine pipe in his pocket. Later, when Mr. Allen's personal belongings were searched pursuant to jail procedure, a bag containing 0.31 grams of crack cocaine was revealed in his hat.

In connection with the Movie Gallery robbery, police officers employed several investigation procedures relating to the identification of the defendant. On the evening of the robbery, police officers accompanied Mr. Hayes to view a man standing at a nearby convenience store, but Mr. Hayes told them the man was not the person who had committed the robbery. Two days later, police showed a single photo of a suspect to Ms. Hopkins and then to Mr. Hayes, but they both gave a negative response. Four days after the robbery, a police officer asked a different man matching the robber's description to accompany the officer to Ms. Hopkins's house. When they arrived at Ms. Hopkins's house, she declared that the man was not the robber.

A police officer compiled a photographic lineup of five or six photos, including a suspect he thought matched the description of the robber. Neither Ms. Hopkins nor Mr. Hayes identified any of the photos in that lineup as the robber. Later, the day after the search warrant was executed at Mr. Allen's residence, the investigating detective showed a single photo of Mr. Allen first to Mr. Hayes and separately to Ms. Hopkins. Both identified the photo as the person who had robbed the store. Mr. Hayes testified that viewing the photo was a "flashback" of the exact person who had robbed the store. Ms. Hopkins testified that her reaction to the photo was like she was transported back to the evening of the robbery. A few days later, the investigating detective compiled a photographic lineup of twelve people, including Mr. Allen. This time, when the detective separately asked Mr. Hayes and Ms. Hopkins whether any of the photos included the robber, both witnesses selected Mr. Allen's photo without hesitation.

In January 2007, Mr. Allen was indicted by a Pettis County grand jury on one count of robbery in the first degree, in violation of section 569.020, RSMo 2000. The case was subsequently scheduled for trial to be held August 2, 2007.

Prior to trial, Mr. Allen filed several motions to exclude evidence. His motion to suppress the identification testimony of Ms. Hopkins and Mr. Hayes alleged that the police procedures used were unduly suggestive, rendering the identifications of Mr. Allen unreliable and violating his due process rights. Mr. Allen's motion to suppress the coveralls as evidence alleged that the evidence was inadmissible because it was the product of an illegal search and seizure. His motion in limine to exclude the drug evidence alleged it was inadmissible evidence of "other crimes."

During the hearing on the motion to suppress the identification testimony, Mr. Allen presented the testimony of Dr. Roy Malpass, an expert on eyewitness identification. The State objected that the expert testimony was inadmissible, but the trial court allowed the expert to testify for purposes of the hearing. Dr. Malpass testified about some of the problems associated with eyewitness identifications. Next, the State called a detective who testified about his preparation and presentation to the witnesses of the photo lineup. Finally, the two eyewitnesses who were also the robbery victims, Ms. Hopkins and Mr. Hayes,

each testified about their recollection of the robbery and their identification of Mr. Allen as the robber.

At the hearing on Mr. Allen's motion to suppress the coveralls as evidence, police officer Kelley Casto testified that when they searched Mr. Allen's residence, police observed the coveralls hanging in plain view and seized them based upon probable cause to believe the clothing was evidence related to the Movie Gallery robbery.

No testimony was offered during the hearing on Mr. Allen's motion in limine to exclude the drug evidence, but the parties presented arguments.

The trial court denied Mr. Allen's motions to suppress. The court also denied his motion in limine to exclude the drug evidence, based on the State's assertion that the evidence was admissible to show motive.

The State filed a motion in limine seeking to exclude the expert testimony of Dr. Malpass. The trial court initially denied the motion, indicating that the witnesses' identification was an issue for the jurors, who could properly consider the expert's testimony. Later, the trial court reversed itself and granted the motion.

At trial, Ms. Hopkins testified that she observed Mr. Allen's face unobstructed for a short time before he covered it with his hand. She was able to identify Mr. Allen in court as the person who robbed her. Mr. Hayes also had an independent basis for his identification of Mr. Allen. Mr. Hayes testified that he had a view of the store entrance from his counter, and he looked directly at Mr. Allen as Mr. Allen entered the store.

The jury found Mr. Allen guilty of the charged offense, and he was sentenced to fifteen years imprisonment as a prior and persistent offender. This appeal followed.

## Standard of Review

On appeal, Mr. Allen alleges error in the trial court's denials of his motions to suppress evidence; the court's rulings on the admissibility of various items of evidence; the court's refusal to give one of his tendered jury instructions; and the court's ruling allowing the victim-witnesses to be present in the courtroom during pre-trial hearings.

■ Review of the trial court's denial of a motion to suppress evidence is limited to a determination of whether the ruling was supported by substantial evidence. *State v. Sanchez,* 178 S.W.3d 549, 553 (Mo.App. W.D.2005). The reviewing court views the evidence along with any reasonable inferences from the evidence in the light most favorable to the trial court's ruling and defers to the trial court's determination as to the credibility of witnesses. *Id.* " 'The trial court's ruling will be reversed only if clearly erroneous.' " *Id.* (quoting *State v. Granado,* 148 S.W.3d 309, 311 (Mo. banc 2004)).

■ The trial court's decision on whether to admit evidence is reviewed for abuse of discretion. *State v. Smith,* 136 S.W.3d 546, 550 (Mo.App. W.D.2004). "A trial court's decision to admit evidence is an abuse of discretion when it is clearly against the logic of the circumstances then before the court, and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." *Id.*

■ The same standard of review governs our review of the trial court's decision assessing whether or not the testimony of an expert is admissible, *State v. Love,* 963 S.W.2d 236, 239–40 (Mo.App. W.D.1997), and whether to submit or refuse a tendered jury instruction. *State v. Haley,* 73 S.W.3d 746, 752 (Mo.App. W.D.2002).

■ In general, the trial court has authority to exclude witnesses from the courtroom so that they will not be privy to testimony provided by other witnesses, and the decision whether to exclude a witness is reviewed for abuse of discretion. *Grab ex rel. Grab v. Dillon*, 103 S.W.3d 228, 236 (Mo.App. E.D.2003). However, the witnesses involved in this case are also the victims of the crime, and as such, they are protected by the crime victims' rights statute. Therefore, this case is essentially a construction by the court of the crime victims' rights statute, section 595.209, RSMo Cum.Supp.2007. A trial court's construction of a statute is a question of law which this court reviews de novo. *State v. Cowan*, 247 S.W.3d 617, 619 (Mo. App. W.D.2008).

### Point I: Seizure of Clothing in Plain View

■ Mr. Allen contends that the trial court erred in overruling his motion to suppress the bib coveralls and a jacket recovered by police because he claims the evidence was seized in violation of his constitutional right under the Fourth Amendment to be free from unreasonable search and seizure. Specifically, he claims that because the clothing was not described in the search warrant, it was outside the scope of items that could constitutionally be seized.

■ The Fourth Amendment guarantees the right to be free from unreasonable searches and seizures. U.S. CONST. amend. IV. In general, a reasonable search must be based on probable cause and executed pursuant to a valid warrant. *See, e.g., State v. Gantt*, 87 S.W.3d 330, 332 (Mo.App. W.D.2002)(citing *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). However, one exception to the warrant requirement is the seizure of items in plain view. *Id.* at 333.

■ The "plain view doctrine" allows an officer, who is lawfully located in a place, to seize any objects that can plainly be seen if probable cause exists that the object is connected to a crime. *State v. Apel*, 156 S.W.3d 461, 467 (Mo.App. W.D. 2005) (citing *State v. Johnston*, 957 S.W.2d 734, 742 (Mo. banc 1997)). Under the doctrine, evidence in plain view can be seized where: (1) the evidence was in an area where the items described in the search warrant might be, and (2) the incriminating character of the evidence was apparent. *State v. Malone*, 951 S.W.2d 725, 728 (Mo.App. W.D.1997).

In this case, the seizure of the coveralls meets both requirements of the "plain view" doctrine. The clothing was seized from inside Mr. Allen's attached garage, an area where the items described in the search warrant could have been found. Although the warrant was issued in connection with the investigation of newspaper machine theft, the clothing was in an area where the newspaper machines could have been found, and it was hanging where it could plainly be seen. *See id.* Police officers gained access to the garage during the execution of a search warrant issued for Mr. Allen's residence. The police officers were lawfully present in the garage pursuant to the search warrant. Notably, Mr. Allen does not challenge the validity of the search warrant or the police officers' presence in Mr. Allen's residence.

Because the officers knew that a suspect involved in a recent robbery in the same community had been wearing bib coveralls, the incriminating nature of the coveralls in Mr. Allen's garage was immediately apparent. *See Johnston*, 957 S.W.2d at 742–43 (citing *Horton v. California*, 496 U.S. 128, 136–37, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990))(noting that "[p]robable cause exists where the apparently incriminating character of the item is obvious"); *see also*

*Malone,* 951 S.W.2d at 728–29 (electronic equipment in plain view could be seized because it was in an area where the controlled substances described in the search warrant might be, and the incriminating character of the electronic equipment was immediately apparent based on a tip the officers received that the defendant was trading electronic equipment for drugs at the house).

■■■ "The seizure of property in plain view is presumptively reasonable when probable cause exists to associate the property with criminal activity." *State v. Nichols,* 200 S.W.3d 115, 121 (Mo.App. W.D.2006). The police officers had probable cause to associate the coveralls with the robbery. *See Johnston,* 957 S.W.2d at 742–43. Accordingly, the trial court's ruling is not clearly erroneous.

The point is denied.

## Point II: Evidence of Other Crimes

■■■ Mr. Allen claims that the trial court erred in admitting evidence of drugs and drug paraphernalia because the evidence was inadmissible evidence of other crimes. He contends that the drug evidence was prejudicial and unrelated to the crime of robbery with which he was charged.

■■■■ In general, evidence of crimes other than that which the defendant has been charged is inadmissible. *State v. Johnson,* 207 S.W.3d 24, 42 (Mo. banc 2006). However, the evidence of other crimes may be admissible where it is both logically and legally relevant. *State v. Davis,* 211 S.W.3d 86, 88 (Mo. banc 2006). Evidence of other crimes is logically relevant if it has some legitimate tendency to establish guilt of the specific crime charged, by establishing: (1) identity, (2) motive, (3) intent, (4) the absence of mistake or accident, or (5) a common scheme

or plan. *State v. Bernard,* 849 S.W.2d 10, 13 (Mo. banc 1993). Evidence is legally relevant when its probative value outweighs its prejudicial effect. *State v. McCoy,* 175 S.W.3d 161, 163 (Mo.App. E.D.2005)(citing *Bernard,* 849 S.W.2d at 17). Still, the trial court " 'should require that the admission of evidence of other crimes be subjected to rigid scrutiny' " because the evidence may raise a false presumption of guilt in the jurors' minds. *State v. Davis,* 211 S.W.3d at 88 (citation omitted).

■■■ In this case, the State argued for admission of the drug evidence under the exception allowing evidence of other crimes that tend to establish a motive for the crime charged. While it is true that evidence of prior drug use may be admissible to explain the defendant's motive to steal to support a drug habit, *see State v. Sims,* 952 S.W.2d 286, 292 (Mo.App. W.D. 1997), the State is not entitled to automatically assume that whenever the defendant is charged with the crime of stealing, evidence of other crimes bearing on motive is automatically admissible. *See State v. McCoy,* 175 S.W.3d at 163–64 (discussing intent).

Courts have upheld admission of drug evidence to establish motive where the record explicitly included some explanation of motive. For example, where the *defendant testified that he was an addict,* it would arguably show he had a motive to traffic in drugs. *State v. Roberson,* 941 S.W.2d 7, 11 (Mo.App. S.D.1997). Or, where the *defendant told the detective he had been stealing to support a cocaine habit,* the testimony was admissible to show defendant's motive for the burglary. *State v. Lewis,* 734 S.W.2d 515, 517 (Mo. App. W.D.1987), *overruled on other grounds by State v. Carson,* 941 S.W.2d 518 (Mo. banc 1997). Or, where the *evidence of the defendant's prior drug use*

and the fact that he was *pawning items to obtain money for drugs* helped show a motive to commit the crimes. *Sims*, 952 S.W.2d at 292.

In this case, mere possession of drugs and drug paraphernalia by the accused, four days after the crime occurred, cannot by itself establish motive. The record contains no evidence or testimony attributing any previous drug use or financial trouble to Mr. Allen. In fact, no evidence in the record exists to link the drug evidence with the crime charged. The *State's* unsubstantiated assertion that Mr. Allen committed the robbery "to feed a crack cocaine habit" is not evidence. If the State sought to prove motive for the robbery, then the burden was upon the State to present evidence connecting the drug evidence to the robbery that had occurred four days earlier.

The State relies on *State v. Bowles* for the proposition that evidence of drug paraphernalia is admissible to prove motive for committing the charged offense. 23 S.W.3d 775, 780–81 (Mo.App. W.D.2000). However, the facts in *Bowles* are easily distinguishable. In *Bowles*, the statement about drug paraphernalia was not elicited purposefully, and " 'the statement was singular and isolated.' " *Id.* at 781 (quoting *State v. Silas*, 885 S.W.2d 716, 720 (Mo. App. W.D.1994)). The jury was instructed to disregard the statement. *Id.* Finally, the court determined that the statement did not play a decisive role in the determination of guilt, based on the strength of the other evidence presented. *Id.*

The State asserted during oral argument in this case that "there was very little evidence" about the drugs adduced at trial, and references to the drugs were "very low key." The State further claimed that the drug evidence "was not argued by the prosecutor." The State concluded, then, that even if it was error to allow the

evidence and argument over Mr. Allen's objection, the error did not result in prejudice to Mr. Allen.

A review of the trial transcript, however, paints a different picture. Despite the State's assertion at oral arguments that "it was not argued by the prosecutor," a few quotes from the State's closing argument are quite revealing. The prosecutor made, *inter alia*, the following arguments:

> The defendant has a motive to commit robbery. A crack pipe with residue in his pocket when arrested, more crack in his ball cap. This evidence of motive is uncontradicted by any defense evidence. And I understand that many people have a desire to have more money. Most people who have student loans don't go out and commit robberies. Unfortunately, many people who have a crack habit do.

The prosecutor ended with the following statement:

> This case *is about* whether this man walked in on Christmas Eve desperate enough to threaten the use of a gun just to get money to feed a crack cocaine habit. (Emphasis added.)

Far from the accidental, isolated reference to drugs made in *Bowles*, in the case *sub judice*, the State deliberately elicited testimony about drugs and drug paraphernalia found in Mr. Allen's possession. The drug evidence was emphasized and magnified, because four out of eight of the State's witnesses testified about the drug evidence. The testimony made specific, rather than indefinite, reference to the drugs, in that the State presented extensive testimony from a toxicologist to establish that cocaine base was found. Further distinguishing *Bowles*, in which the objection to the testimony was sustained and which the jury was instructed to disregard, in this case, Mr. Allen's motion in limine was denied, the objection at trial was over-

ruled, and the drug evidence was emphasized repeatedly by the prosecutor in closing argument. In light of the record, it could be fairly stated that the State considered the defendant's motive to support his alleged drug habit to be the entire theory of its case.

The State has provided us with no cases, and our research reveals no cases, where evidence of possession of drugs alone, without any corroborating evidence of a drug habit or addiction, is sufficient to allow the drug evidence to be presented to prove "motive" to commit a separate crime charged, unless the drugs were found in the possession of the offender at the time of the commission of the charged offense. The drugs allowed in evidence at this trial were seized from Mr. Allen when he was arrested at his home after a search warrant was executed to search for evidence of newspaper machine theft, four days after the Movie Gallery robbery was committed. The drug evidence in this case was not sufficient to create the "motive" exception to the well-established rule that evidence of other crimes is not admissible to prove the crime charged.

Even if the record demonstrated that the evidence was logically relevant (i.e., to show motive to commit the robbery), the State still had the burden to prove the evidence was legally relevant. Evidence of prior crimes is legally relevant only when its probative value outweighs its prejudicial effect. *State v. Bernard*, 849 S.W.2d at 17. Where erroneously admitted evidence was prejudicial to the point that it was outcome-determinative, reversal is required. *State v. Johnson*, 207 S.W.3d 24, 42 (Mo. banc 2006). In the present case, the drug evidence was so prejudicial that it could well have affected the outcome of the trial.

Because the probative value of the drug evidence was slight and was outweighed by its prejudicial effect, *see id.*, the trial court's admission of the drug evidence over Mr. Allen's objection was erroneous and an abuse of discretion. The point is granted, the judgment of conviction is reversed, and the case is remanded for a new trial.

## Point III: Pretrial Identification

■ Mr. Allen alleges that the trial court erred in overruling his motion to suppress the witnesses' pretrial and in-court identifications. He contends that because the identifications were the result of unduly suggestive police procedures, they were inherently unreliable.

■ In determining whether pretrial or in-court identification of a defendant is admissible, the court uses a two-part analysis. *State v. McElvain*, 228 S.W.3d 592, 600 (Mo.App. W.D.2007). First, the court determines "whether the lineup was unnecessarily suggestive and conducive to irreparable mistaken identification." *Id.* at 600–01 (citation and internal quote marks omitted). Second, if the court finds unduly suggestive procedures, the court determines " 'whether the suggestive procedures have so tainted the identification as to lead to a substantial likelihood that the pretrial identification was not reliable.' " *Id.* at 601 (quoting *State v. Glover*, 951 S.W.2d 359, 362 (Mo.App. W.D.1997)).

Mr. Allen claims that various police tactics used in the identification procedures in this case were unduly suggestive. He complains of the following procedures, *inter alia:* conducting a "show up"; use of Mr. Allen's mug shot; repeated use of Mr. Allen's photo; use of leading questions; improper "filler" photographs in the photo lineup; improper "confirmation" of the witness's selection; failure to properly instruct the witness; and failure to properly document the procedures.

"'A pretrial identification procedure is unduly suggestive if the identification results not from the witness's recall of first-hand observations, but rather from the procedures or actions employed by the police.'" *Id.* (citations omitted). In this case, none of the identification procedures of which Mr. Allen complains was unduly suggestive. Mr. Allen challenges the police officers' use of a "show up." A "show up," or showing the witness a photo lineup involving a single photo, is not necessarily unduly suggestive. *Id.* He also challenges the use of a "mug shot" photo. Police officers' use of a "mug shot" photo without visible inculpatory information is considered neutral, and the mere fact that a police department previously had a photograph of a defendant on file is not unduly suggestive. *State v. Carr,* 50 S.W.3d 848, 856 (Mo.App. W.D.2001).

Mr. Allen contends that the use of his photo in the identification lineup, after a photo of him had previously been shown to the witnesses, was unduly suggestive. However, the record shows that Ms. Hopkins identified Mr. Allen's photo based solely on her memory of what she saw the night of the robbery, and not because his was the only photo in the lineup that had appeared in the previous "show up." *See State v. Glessner,* 918 S.W.2d 270, 278 (Mo.App. S.D.1996)(evidence established that witness identified defendant's photo as a photo of the gunman because of facial hair, not because defendant was the only person in the photo lineup who had appeared in the live lineup). Further, an initial identification by photo followed by a lineup identification is not *per se* unduly suggestive. *State v. Chambers,* 234 S.W.3d 501, 514 (Mo.App. E.D.2007).

Mr. Allen argues that the police officers and investigator unfairly selected the "filler" photographs in the photo lineup. He claims the "filler" photos' facial hair, hair color, and background color were dissimilar from Mr. Allen's photo. Nevertheless, "a lineup is not impermissibly suggestive simply because the individuals in the lineup have different physical characteristics." *State v. Cosby,* 976 S.W.2d 464, 468 (Mo.App. E.D.1998). The police officer testified that he selected twelve pictures based on the description of the suspect as fifty years of age, bearded, graying, and slender. Because "[a] reasonable effort to find physically similar participants is all that is required," the alleged differences in hairstyle or other physical characteristics do not necessitate a finding of unduly suggestive police procedures. *Id.*

Mr. Allen further claims that police officers improperly "confirmed" the witnesses' selection, by suggesting that the witnesses had selected the correct person. The detective made a corroborating comment to one of the witnesses after she had identified Mr. Allen's picture as the man who had robbed the store. Where police told the witness the defendant's name only after she picked him as the robber, the identification was not impermissibly suggestive. *State v. Jones,* 917 S.W.2d 622, 624 (Mo.App. E.D.1996). Furthermore, an identification is not impermissibly suggestive because a witness is told by the police that the photo lineup contains a picture of the suspect. *Id.*

Mr. Allen further claims that because the detective in this case conducted the lineup, presumptive evidence of suggestiveness resulted because the detective was a "non-blind administrator." In support of his claim, Mr. Allen relies on case law from foreign jurisdictions, by which this court is not bound. He cites no Missouri law that requires the identification procedures be administered by someone outside of the investigation.

Mr. Allen complains that police officers failed to properly instruct the witnesses and to properly record the procedures used. However, nothing in the record shows that police officers improperly instructed the witnesses. Testimony from the police officer conducting the photo line-up established that he directed the witnesses to pick the person they believed was the suspect, who may or may not appear in the lineup.

Finally, Mr. Allen's argument that police officers were required to make a written record of the witnesses' responses at the moment of identification is not supported by Missouri law. The record contains ample evidence, including testimony of police officers and both witnesses, to show that the procedures were not unduly suggestive.

■ Even assuming that Mr. Allen could establish that the identification procedures were unduly suggestive, he cannot demonstrate they were so suggestive that a substantial likelihood existed that the reliability of the identification evidence was called into question. *State v. Barriner*, 210 S.W.3d 285, 296 (Mo.App. W.D. 2006). Five factors are considered in analyzing whether the identification was reliable:

"(1) The opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness'[s] prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation."

*McElvain*, 228 S.W.3d at 601 (internal quote marks and citations omitted). However, our review of the reliability of the identification evidence is neither necessary nor appropriate unless the defendant establishes that the police procedures were

unduly suggestive. *Id.* Because Mr. Allen failed to demonstrate that the police used procedures that were unduly suggestive, "'the factors considered in the reliability prong of the test go to the weight of the identifications and not to their admissibility.'" *Id.* (citation omitted). The trial court's denial of Mr. Allen's motion to suppress the witnesses' pretrial identification was not erroneous.

The point is denied.

## Point IV: Expert Witness on Eyewitness Identification

Mr. Allen contends that the trial court abused its discretion in granting the State's motion to exclude the testimony of his expert witness on eyewitness identification, Dr. Roy Malpass. He argues that this ruling denied him the opportunity to present his defense of mistaken identification caused by suggestive police procedures.

■ To be admissible, the expert testimony should address a subject about which the jurors lack experience or knowledge. *State v. Love*, 963 S.W.2d 236, 241 (Mo.App. W.D.1997). The expert testimony must assist the jury and must not unnecessarily divert the jury's attention from the relevant issues. *Id.*

Exclusion of expert testimony concerning eyewitness identification has been upheld on the theory that jurors can "rely on their own experience to reach a judgment on what weight to give eyewitness evidence." *State v. Lawhorn*, 762 S.W.2d 820, 823 (Mo. banc 1988). Mr. Allen argues that Missouri law does not mandate the exclusion of expert testimony on eyewitness identifications in every case. He urges that the present case involves a subject on which the jurors, without knowledge of the research on eyewitness errors leading to wrongful convictions, are incap-

able of drawing a proper conclusion from the facts in evidence. *Id.* Specifically, he asserts that the expert testimony addresses an area not within the jury's understanding, in that most jurors would be unaware of the research revealing weaknesses or inaccuracy in eyewitness identification. Further, he claims that the expert testimony does not unnecessarily divert the jury's attention from the relevant issues, because the testimony directly addresses the issue of the witnesses' identifications of Mr. Allen.

As noted, *supra,* the admissibility of expert testimony is left to the sound discretion of the trial court and will not be reversed on appeal unless there is a clear abuse of discretion. *Love,* 963 S.W.2d at 239. Here, it would not have been an abuse of discretion for the trial court to have allowed Dr. Malpass's expert testimony. It was similarly not an abuse of discretion for the trial court to have excluded the testimony.

The point is denied.

## Point V: Research Report Excluded from Evidence

■ Mr. Allen claims that the trial court erred in excluding from evidence the Department of Justice Guidelines on Eyewitness Evidence research report ("report"), claiming that the report was admissible as a "public document." At trial, Mr. Allen offered the report as evidence of best practices for police officers conducting witness identification procedures, purportedly under the "government publications" exception to the ban on hearsay evidence. The State objected that the report was hearsay not within any exception, and the trial court sustained the objection.

■ "Hearsay is an out-of-court statement made by someone not before the court that is offered to prove the truth of the matter asserted." *State v. Larson,* 941 S.W.2d 847, 854 (Mo.App. W.D.1997). All hearsay is inadmissible at trial unless an exception to the hearsay rule applies. *Id.* Mr. Allen claims that the report was admissible under the exception for public documents. In his brief, Mr. Allen specifically bases his claim on section 490.150, RSMo 2000, which provides for admissibility of "public documents ... edited ... by authority of congress" as evidence.

To be admissible under section 490.150, the proponent of the document must present evidence to support its admission. *State ex rel. State Highway Comm'n v. Dockery,* 340 S.W.2d 689, 692 (Mo.1960). In this case, Mr. Allen made no effort to show that the report was based upon reliable sources of information, in that he failed to "show that the book had the status of a published document purporting to have been 'edited or printed by authority of congress.'" *Id.* (quoting section 490.150, RSMo, and finding it was not err to exclude a book prepared by a federal agency, where the defendants did not show that the book had the status of a published document purporting to have been edited or printed by authority of congress).

Mr. Allen asserts the general admissibility of "public records," but he does not rely on any other specific statutory provision, such as the "public records" exception set forth at section 490.220, RSMo 2000, which provides for admission of office records of other states or the federal government. While public records may be admissible as substantive evidence, that exception is not applicable in this case. "Public records" refers to evidence of "a record kept or prepared by a person whose public duty it is to record the facts stated in the document." *See, e.g., State v. Blakeburn,* 859 S.W.2d 170, 177 (Mo.App. W.D.1993). The document in this case does not fit within this definition. The report more closely resembles a handbook or manual than an official government of-

fice record. *See id.* (holding that municipal court records were admissible under "'official records' or 'public documents'" exception). *Cf. Stuart v. Dir. of Revenue,* 761 S.W.2d 234, 238–39 (Mo.App. S.D.1988) (manual for operation of breathalyzer machine was inadmissible).

■■■ Regardless of whether the report was admissible under any statutory or common law exception, Mr. Allen, as the proponent of the evidence, failed meet his burden of establishing its admissibility. "'A number of foundational requirements must be met before a document may be received into evidence, including relevancy, authentication, the best evidence rule and hearsay.'" *State v. Cravens,* 132 S.W.3d 919, 930 (Mo.App. S.D.2004) (citation omitted).

The trial court did not abuse its discretion in excluding the report because Mr. Allen failed to meet the foundational requirements for the document to be admitted.

The point is denied.

### Point VI: Proposed Jury Instruction

■■■ Mr. Allen asserts that the trial court erred in refusing his tendered jury instruction on eyewitness testimony. During the jury instruction conference, he offered a proposed jury instruction on "the dangers of eyewitness identification." The three-page instruction was based on the Department of Justice Guidelines discussed in Point V, *supra.* The trial court refused the instruction and submitted instead those instructions required by the Missouri Approved Instructions—Criminal (MAI–CR).

It is not an abuse of discretion for the trial court to "refuse to submit additional cautionary instructions to the jury concerning eyewitnesses." *State v. Haley,* 73 S.W.3d 746, 752 (Mo.App. W.D.2002) (quoting *State v. Gilmore,* 797 S.W.2d 802, 809 (Mo.App. W.D.1990), and *State v. Briscoe,*

913 S.W.2d 812, 816 (Mo.App. W.D.1995)). In *Haley,* the State's case was primarily based on eyewitness testimony identifying Haley as the shooter. *Id.* at 753. The court of appeals found no abuse of discretion in denying a tendered non-MAI–CR instruction, because the instructions submitted included MAI–CR 3d 302.01, which directly addresses witness credibility, and because the defendant failed to show that the mandated MAI–CR 3d 302.01 instruction did not adequately address his defense theory of witness misidentification. *Id.* (further noting, "The Notes on Use (3) for MAI–CR 3d 302.01 prohibit any other or additional instructions regarding the 'believability of witnesses, or the effect, weight or value of their testimony.'" *Id.* at 752–53).

In this case, the trial court's refusal of Mr. Allen's tendered instruction was not an abuse of discretion. The trial court properly instructed the jury based on MAI–CR 3d 302.01. Moreover, the trial court did not err by refusing to give an additional instruction on witness credibility beyond the general credibility instruction of MAI–CR 3d 302.01. *State v. Johnson,* 231 S.W.3d 870, 877 (Mo.App. S.D.2007).

The point is denied.

### Point VII: Presence of Victims in Courtroom

■■■ Finally, Mr. Allen alleges that the trial court erred in allowing two eyewitnesses to be present in the courtroom during the presentation of evidence in violation of his due process rights. Specifically, Mr. Allen objected to the robbery victims remaining in the courtroom during the pre-trial hearing on the motions to suppress evidence, because these victims were also fact witnesses. He argues that testimony presented at the pre-trial hearing unfairly influenced the victims' subsequent trial testimony. The trial court allowed the victim-witnesses to be present during

the proceedings, pursuant to the Missouri Constitution, art. I, section 32, and section 595.209, RSMo Cum.Supp.2007, which sets forth the rights of crime victims.

Article I, section 32 provides that victims of dangerous felonies, such as robbery in the first degree, are afforded certain rights, including an absolute right to be present at any hearing in which the defendant is present. Mo. CONST. art. I, § 32. Section 595.209 was enacted pursuant to the authority granted to the general assembly under article I, section 32, and it further specifies "The rights of the victims granted in this section are absolute and the policy of this state is that the victim's rights are paramount to the defendant's rights." § 595.209.5, RSMo 2000; *See* Mo. CONST. art. I, § 32; *see also State ex rel. Goldesberry v. Taylor*, 233 S.W.3d 796, 798 (Mo.App. W.D.2007)(interpreting the interrelation of victims' rights provisions and Rule 29.07(d), which authorizes the trial court to set aside a guilty plea).

In this case, the trial court correctly concluded, and the strong language of section 595.209.5 supports the fact that, as robbery victims, Ms. Hopkins and Mr. Hayes had the right to be present at all pre-trial hearings. Mr. Allen argues that the victim-witnesses' presence interfered with his right to a fair trial, in that their testimony was tainted by hearing each others' testimony, in addition to the testimony regarding the coveralls and drug evidence. Mr. Allen failed to raise his objection in his motion for a new trial. Although he objected during the pre-trial hearing, renewal of the objection in his motion for new trial was necessary to preserve the issue for appellate review. *See, e.g., State v. Walker*, 972 S.W.2d 623, 624 (Mo.App. S.D.1998)(noting that, "To preserve a constitutional question for review, the litigant must raise the matter at the first opportunity, specifically assert the sections of the constitution alleged to have been violated, and preserve the matter in the motion for new trial.").

The trial court did not err by heeding the clear language of section 595.209.5 and allowing Ms. Hopkins and Mr. Hayes to be present during the pre-trial proceedings.

The point is denied.

### Conclusion

Because the trial court abused its discretion in overruling objections to the admission of the drug evidence seized at the time of the arrest, Point II is granted. The judgment of the trial court is reversed, and the case is remanded for a new trial.

All concur.